## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **CHARLES SCHWAB & CO., INC.** : <br> **101 Montgomery Street** : <br> **San Francisco, California** : <br> : <br> **Plaintiff,** : <br> : <br> v.                                          : <br> : <br> **TODD THRASHER** : <br> **1023 West Frisco Avenue** : <br> **Kirkwood, MO 63122** : <br> : <br> : <br> **Defendant.** : <br> : | **CASE NO:** _____ |

### COMPLAINT FOR TEMPORARY/PRELIMINARY INJUNCTIVE RELIEF

Plaintiff Charles Schwab & Co., Inc. ("Schwab") hereby brings the following Complaint for temporary and preliminary injunctive relief pending arbitration on the merits against defendant Todd Thrasher ("Thrasher" or "Defendant") for (1) breach of contract, (2) misappropriation and misuse of trade secrets, and (3) unfair competition, and in support thereof avers as follows:

### I. THE PARTIES

1. Plaintiff Schwab is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California.

2. Defendant Thrasher is a former Schwab employee, who was employed as a Financial Consultant in Schwab's Clayton, Missouri office. Schwab is informed and believes and therefore alleges that Thrasher is a resident and citizen of the State of Missouri, and resides at 1023 West Frisco Avenue, Kirkwood, MO 63122.

## II.  JURISDICTION AND VENUE

3. Subject matter jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship. Injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because, *inter alia*, it is the district in which the conduct complained of arose, and upon information and belief, it is the district in which Defendant resides.

## III.  THE FACTS

5. Thrasher is a former Schwab employee who resigned from Schwab without providing advance notice on Friday, October 14, 2011 to join Morgan Stanley Smith Barney LLC ("MSSB"), one of Schwab's direct competitors. Thrasher was a Financial Consultant who worked in Schwab's Clayton, Missouri office.

6. During his employment at Schwab, Thrasher serviced clients pursuant to the Schwab Private Client Program, which is described in greater detail below. The majority of the Schwab clients that Thrasher serviced are located in the vicinity of Schwab's Clayton, Missouri office.

7. It bears emphasis that Thrasher did not develop this book of business through cold calls or his own connections in the way that brokers at other brokerage firms do. Rather, Schwab provided him with pre-existing clients or qualified leads to service. As an online discount brokerage firm, Schwab has nearly eight million client brokerage accounts nationwide. Some of these clients have asset levels and needs extending beyond simple online brokerage services. For these clients, Schwab created services like the Schwab Private Client program in which clients

are assigned to a team of three investment professionals that consists of a Financial Consultant (like Thrasher), a Portfolio Consultant, and an Associate Portfolio Consultant who is primarily responsible for providing administrative and clerical support to the Portfolio and Financial Consultants.

8. Portfolio Consultants oversee the construction and rebalancing of client portfolios. They are also responsible for making buy and sell recommendations to clients based on the clients' goals and objectives.

9. Financial Consultants, like Thrasher, work with clients to help them set goals, determine their financial strategies, and review their progress. Financial Consultants can also help clients arrange to receive a personal financial plan, which is a comprehensive analysis of their financial situation. They also partner with other Schwab employees to provide clients with services ranging from estate planning, to fixed income planning, to education and retirement planning. As mentioned above, Financial Consultants often service clients in conjunction with Portfolio Consultants, who oversee the construction and rebalancing of clients portfolios, as well as Associate Portfolio Consultants, who can answer client questions, fulfill service requests and provide a range of assistance.

10. During his employment at Schwab, Thrasher was responsible for servicing a practice of clients that had been developed by Schwab and assigned to him. In this capacity, he serviced dozens of clients with approximately $230 million under Schwab management.

11. To enable him to service these clients, Schwab provided Thrasher with access to Schwab's extensive client records and information including clients' transactional histories, account types, account balances, asset allocations, income, liquid and total net worth, tax status, tax information, investment objectives, and other personal financial information. Schwab paid

Thrasher and provided him an opportunity to develop, cultivate and maintain relationships with its clients.

12.     There is no public source available from which Thrasher could ascertain the identities and contact information of Schwab's clients, much less the high net worth clients he serviced in the Schwab Private Client Program.  The identities of the clients assigned to Thrasher at Schwab are not generally known to third parties such as Defendant's new employer, MSSB. Schwab's customer list – and in particular, its list of Schwab Private Clients – would be very valuable to competitors such as MSSB because it identifies high net worth clients who generate significant revenues and who have a need and desire for this type of financial service.  Schwab's competitors can unfairly benefit from this list because it would enable them to target their financial products, services and efforts to a pre-selected elite group of clients without the need to spend any time, money or resources to identify and develop such clients.

13.     As a condition of employment at Schwab, all employees are required to sign a confidentiality and non-solicitation agreement.  Thrasher was no exception.

14.     On or about April 23, 2002, Thrasher signed a <u>Confidentiality, Nonsolicitation and Assignment Agreement</u>.  A true and correct copy of this agreement is attached hereto as Exhibit "A" and is incorporated herein by reference.  Thrasher executed this Agreement in exchange for being promoted to the position of Private Client Consultant, which enabled him to service clients under the Schwab Private Client Program.

15.     Thrasher's 2002 Agreement acknowledges that as a consequence of his employment with Schwab, he would be given access to confidential information, including the identities of Schwab's clients, their names, addresses, telephone numbers, social security numbers, account information, business information, personal information, financial and other

4

information. See Exhibit "A" at ¶ 1. In light of this access to confidential information, Thrasher agreed not to disclose, reproduce, use or disseminate such confidential information, except as necessary for the purpose of performing his duties and responsibilities on behalf of Schwab. See Exhibit "A" at ¶ 2. He also agreed that for a period of 18 months following the end of his employment with Schwab, he would not solicit or induce, or attempt to solicit or induce any Schwab clients whom he serviced or whose identity he learned during his employment with Schwab to divert or transfer business from Schwab. See Exhibit "A" at ¶ 6.

16. As is done by all Schwab employees who remain employed with Schwab for a period of years, Thrasher repeatedly reaffirmed his obligations by signing additional agreements during the course of his employment. In each agreement, Thrasher agreed not to solicit Schwab customers upon the termination of his employment, to protect the confidentiality of customer information, and not to use or disclose Schwab's confidential information for any purpose aside from performing his duties and responsibilities on behalf of Schwab. True and correct copies of the agreements that Thrasher signed on February 4, 2004 (together with its December 20, 2004 Addendum), March 27, 2006, April 14, 2007, May 15, 2008, and February 19, 2010 are attached hereto as Exhibits "B" through "F" and are incorporated herein by reference.

17. In recognition of the fact that he would be servicing specific clients assigned to him by Schwab (referred to as "Specified Accounts"), Thrasher executed an Addendum to his 2004 Agreement. See the last three pages of Exhibit "B." In the Addendum, Thrasher agreed that "in addition to all of the obligations set forth in the Confidentiality, Nonsolicitation and Assignment Agreement previously executed by me (which I hereby reaffirm), I will not, for a period of one year following the termination of my employment with Schwab initiate any contact for any purpose with any of the Specified Accounts..." The Addendum made clear that this

5

prohibition precluded all initiation of contact with clients, "including notifying them of my new or subsequent place(s) of employment." Finally, the Addendum stated that it "should not be construed as limiting the terms or provisions of [the 2004 Agreement]."

18.     In 2010, Thrasher renewed and reaffirmed his obligations to Schwab for the final time before he resigned when he executed a <u>Confidentiality, Nonsolicitation and Assignment Agreement</u>, which is substantially the same as those he had executed previously during his employment with Schwab.  The 2010 Agreement confirmed Thrasher's agreement to engage in expedited discovery in aid of injunction proceedings, and his specific acknowledgement that his "agreement to engage in discovery…is an essential term of my arbitration agreement with Schwab, and that these provisions are intended to supplement and modify any applicable arbitration rules." <u>Id.</u> at ¶ 10.  A true and correct copy of the agreement that was signed by Thrasher on February 19, 2010 is attached hereto as Exhibit "F" and is incorporated herein by reference.  The 2010 Agreement also states that it "supplements any prior agreements I have with Schwab, all of which remain in full force and effect." <u>See</u> Exhibit "F" at ¶ 12.

19.     In sum, Schwab was repeatedly clear with Thrasher about his confidentiality and post-employment obligations.

20.     As a condition of employment with Schwab, all registered representatives must execute a Form U-4, which is an application to the NASD (now known as FINRA) for registration as a general securities representative.  A true and correct copy of the Form U-4 maintained in Schwab's files that Thrasher signed is attached hereto as Exhibit "G" and incorporated herein by reference.

21.     Thrasher is bound by terms of the various agreements he executed with Schwab.

6

22.     In consideration of the covenants signed by Thrasher, Schwab agreed to, and did, provide Thrasher with confidential information, and it did employ and compensate Thrasher, provide him with employment related benefits, and provide him with other good and valuable consideration including assigning him to service specific retail client account relationships, providing him with Schwab sales support, operational systems, research and investment recommendations, clearing and financial services, Schwab goodwill and reputation, and opportunities to develop relationships with Schwab customers.

23.     Thrasher resigned from Schwab on Friday, October 14, 2011 without providing any advance notice, and he immediately began employment with MSSB.

24.     Unfortunately, Thrasher has ignored his obligations to Schwab.  Specifically, he has breached his agreements by using Schwab's customer information to identify, contact, solicit and induce Schwab clients to transfer their accounts and otherwise divert business from Schwab to his new employer, MSSB.  Numerous Schwab clients have reported to Schwab and therefore Schwab alleges that Thrasher has called clients to discuss his resignation from Schwab and his subsequent affiliation with MSSB.  During these calls, Defendant disparaged Schwab's SPC services.  As a consequence of Thrasher's conduct, numerous clients have begun transferring their accounts from Schwab to MSSB to be serviced by Thrasher.

25.     Upon information and belief, and as Schwab expects to establish upon further investigation or discovery, Schwab alleges that (a) MSSB has agreed to pay, and in fact is paying, for Defendant's attorneys' fees incurred and to be incurred in connection with the defense of Schwab's claims (described below); (b) MSSB has provided Defendant with substantial monetary incentives either in the form of upfront forgivable loans, backend bonuses, and/or other financial incentives based upon representations made by the Defendant concerning

the clients he serviced at Schwab and which he expects to successfully divert to MSSB; (c) MSSB has told the Defendant that it will indemnify him if Schwab obtains a monetary award as a result of any litigation or arbitration arising from an alleged breach of his contractual, statutory and/or common law obligations to Schwab; and (d) that MSSB believes it can profit from Defendant's unlawful conduct described herein. Consequently, the Defendant is intentionally breaching his obligations to Schwab.

26. By using the client identities that he learned solely through Schwab, Defendant has (at a minimum) violated his contractual obligations not to use Schwab's confidential client information.

27. There is no public source available from which the Defendant could ascertain the identities of Schwab's clients, much less the high net worth clients he serviced pursuant to the Schwab Private Client Program.

28. In addition, by contacting these clients (whom the Defendant knows to have a need for his services at MSSB) to discuss his new employment with MSSB, and by disparaging Schwab's services during these calls, the Defendant is violating his promise not to use Schwab's client information, not to contact Schwab's clients, and not to solicit or induce Schwab's clients to divert business from Schwab.

29. Schwab takes numerous steps to preserve the confidentiality of its client information. In addition to requiring employees to sign agreements such as those described above, these steps include implementing additional policies and procedures to preserve and safeguard confidential customer information. For example, Schwab trains its employees concerning their obligations to protect client information, and in addition to branch managers, Schwab has enacted a centralized management operation with managers responsible for

8

monitoring outgoing correspondence to protect against the wrongful dissemination of proprietary information. Schwab also has an online system that is designed to flag outgoing emails that contain customer information, and the use of fax machines is restricted and monitored to protect customer information from being transmitted in that manner. Schwab also has adopted its "Code of Conduct" (the "Code"). The Code has a specific section on "Confidentiality of Client Information" which provides: "Information concerning the identity of clients and their transactions and accounts is confidential. Such information may not be disclosed to persons within the company except as they may need to know it in order to fulfill their responsibilities to the company. You may not disclose such information to anyone or any firm outside the company" except in very limited circumstances that do not apply here. A true and correct copy of the Code is attached hereto as Exhibit "H" and incorporated herein by reference. The Code also states: "You have the responsibility to safeguard proprietary information of the company and comply with the company's Confidentiality, Non-solicitation and Assignment Agreement, the terms of which are a condition of your employment." In addition, coded passwords are required to access client records and information on the Schwab computer system.

30. The books, files and records of Schwab, and especially the data pertaining to Schwab's clients, constitutes confidential and trade secret information.

31. This information derives independent economic value because it is not generally known to competitors who can profit from its use or disclosure. Schwab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

32. Schwab has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to be

9

used to access Schwab computer systems and records, restricting access to its business premises, implementing policies such as those described above, and having employees, including the Defendant, sign agreements which expressly prohibit the use and disclosure of such information outside of Schwab.

33. The Defendant's conduct was not privileged, and resulted in great damage to Schwab.

34. Schwab is informed and believes and thereupon alleges that unless enjoined from doing so, Defendant will otherwise continue to engage in wrongful and unlawful acts described herein.

35. Because Defendant is a person currently and formerly associated with the Financial Industry Regulatory Authority ("FINRA") (formerly known as the NASD) firm, the parties have agreed and are obligated to arbitrate the merits of the claims presented herein before FINRA Dispute Resolution pursuant to the FINRA Code of Arbitration Procedure.  FINRA Code of Arbitration Procedure Rule 13804 provides that any party seeking preliminary injunctive relief must do so exclusively in a court of competent jurisdiction.  Rule 13804 further provides that when a court grants injunctive relief, an expedited hearing on the merits of a permanent injunction will be commenced within fifteen days.  Concurrent with the filing of this civil action, Schwab has commenced an arbitration against the Defendant before FINRA.

### COUNT I
### INJUNCTIVE RELIEF

36. The allegations of Paragraphs 1 through 35 are incorporated by reference herein with the same force and effect as if set forth in full below.

37. By virtue of the foregoing, Schwab has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against the Defendant.

38. Unless the Defendant is preliminarily enjoined from the foregoing conduct, Schwab will be irreparably harmed by: (a) disclosure and misuse of trade secrets, customer lists, and/or other confidential information that is solely the property of Schwab and its clients; (b) loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; (c) loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and (d) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

39. Schwab has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

40. The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41. By virtue of the foregoing conduct, Defendant has violated his Agreements with Schwab.

42. Defendant is continuing to violate his contractual obligations.

43. As a consequence of the foregoing, Schwab has suffered and/or will continue to suffer irreparable harm and loss.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**THE MISSOURI UNIFORM TRADE SECRETS ACT**

44. The allegations of Paragraphs 1 through 43 are incorporated herein by reference with the same force and effect as if set forth in full below.

45. The books, files and records of Schwab, the confidential information contained therein, and especially the data pertaining to Schwab customers, including customers' names and addresses, as well as additional information such as customers' social security numbers, account numbers, financial status, financial statements, investment objectives and preferences, assets and/or securities held by these customers, and other highly confidential personal and financial information, are trade secrets of Schwab subject to protection under the Missouri Uniform Trade Secrets Act.

46. This information derives independent economic value by not being accessible, through proper means, to competitors such as MSSB, which can profit from its use or disclosure. The identities of Schwab's clients are not readily available to the public or to Schwab's competitors. Schwab has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

47. Schwab has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to be used to access Schwab computer systems and records, restricting access to its business premises, and having employees, including Defendant, sign agreements which expressly prohibit the use and disclosure of such information outside of Schwab.

48. The foregoing conduct of Defendant constitutes a conversion and misappropriation and misuse of Schwab's confidential, trade secret information in violation of

Missouri law because Defendant has used and/or disclosed Schwab's customer information without Schwab's consent and despite the fact that Defendant's knowledge of this information was acquired by them under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Defendant owed Schwab as an agent, employee and representative of Schwab.

49. As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV
## UNFAIR COMPETITION

50. The allegations of Paragraphs 1 through 49 are incorporated herein by reference with the same force and effect as if set forth in full below.

51. The foregoing conduct of Defendant constitutes an unfair method of competition.

52. As a consequence of the foregoing, Schwab has suffered and will continue to suffer irreparable harm and loss.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts and conduct complained of in Counts I through IV, Schwab demands temporary and preliminary injunctive relief pending the outcome of an expedited arbitration hearing to be held pursuant to Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure, and respectfully requests:

(1) A temporary restraining order and/or preliminary injunction issue enjoining Defendant Thrasher, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of MSSB from:

    (a) soliciting any business from, or initiating any further contact or communication with, any customer of Schwab whom Defendant serviced at

13

Schwab, and/or any prospective customers or any customers whose identities he learned as a result of his employment with Schwab (the "Customers"), including for the purpose of advising any Customers of his new affiliation with MSSB or for the purpose of inviting, encouraging, or requesting the transfer of any Customer accounts from Schwab to MSSB (excluding members of Defendant's immediate family and any customers who have signed account transfer forms);

(b)   using, disclosing, or transmitting for any purpose, including the solicitation or conducting of business or initiation of any contact with Schwab clients, the information contained in the records of Schwab, or other information pertaining to Schwab clients, including, but not limited to, the names, addresses, telephone numbers, email addresses, personal data and financial information of the clients (excluding members of Defendant's immediate family and any customers who have signed account transfer forms);

(c)   destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) in Defendant's possession or control which were obtained from, or contain information derived from, any Schwab records, which pertain to Schwab's clients, or which relate to any of the events alleged in the Complaint in this action.

(2)   Defendant, and anyone acting in concert or participation with him, including his counsel, and any agent, employee, officer or representative of Defendant's new employer, be further ordered to return to Plaintiff's counsel any and all records or information pertaining to the Customers, whether in original, copied, computerized, handwritten or any other form, and to

14

purge any such information from his possession, custody, or control, within 24 hours of notice to Defendant or his counsel of the terms of this Order; provided, however, that any information in computerized or electronic form (including but not limited to personal computers, computers, Blackberries, iphones, Treos, Palm Pilots, mobile telephones, compact or floppy discs, flash (thumb) drives and any other device or media in, or on, which data can be electronically stored) shall be provided by Defendant to his counsel within 24 hours of notice to Defendant or his counsel of the terms of the Court's Order, and Defendant's counsel shall preserve the integrity of such data, devices and storage media, and shall immediately (and in no event later than 7 calendar days after the entry of this order) make any and all such data, devices and media available for inspection, imaging and duplication by Plaintiff's counsel and/or Plaintiff's computer forensic consultants.  After imaging and inspection of the electronic devices by Schwab, any Customer information shall be deleted and/or purged from the devices by Schwab.

(3)     Defendant Thrasher be ordered to sit for a deposition within seven calendar days concerning the matters alleged in Schwab's Complaint.

(4)     Any other relief that the Court deems appropriate and proper.

Dated: October 27, 2011

>Respectfully submitted,

>*/s/ J. Randall Coffey*
>J. Randall Coffey E.D. Mo. # 532050
>FISHER & PHILLIPS LLP
>The Stilwell Building, Suite 400
>104 West Ninth Street
>Kansas City, MO 64105-1718
>TEL: (816) 842-8770
>FAX: (816) 842-8767
>ATTORNEY FOR PLAINTIFF